IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

PHILLIP M. VELAZQUEZ,           §
Institutional ID No. 175528,    §
                                §
            Plaintiff,          §
                                §
                                §   CIVIL ACTION NO. 5:20-CV-078-BQ
v.                              §
                                §
CODY BAKER, *et al.*,           §
                                §
            Defendants.         §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The United States District Judge transferred this case to the undersigned magistrate judge

for further proceedings, including filing proposed findings of fact, conclusions of law, and

recommendations for disposition in the event all parties did not consent to proceed before the

magistrate judge. ECF No. 7. The undersigned completed screening of this case on October 15,

2020, and directed service as to Direct Response Team (DRT) Officer Hannah[1] Durham. ECF No.

12. Officer Durham failed to answer or otherwise respond within twenty-one days of service, and

the undersigned issued a Show Cause Order on December 7, 2020, directing Officer Durham to

"show cause why she should not be held in contempt of court for failing to comply with the Court's

October 15, 2020, order . . . ." ECF No. 15. Officer Durham subsequently filed a motion to dismiss

and a response to the Show Cause Order on December 28, 2020. ECF Nos. 17, 19. As of the date

of this order, not all parties have consented to jurisdiction by the magistrate judge. In accordance

---

[1] Based on her filings, it appears Defendant's first name is spelled "Hannah" rather than "Hanah." ECF Nos. 17, 18,
19. The Court will therefore use this spelling for Defendant's name.

with the order of transfer, the undersigned now makes the following findings, conclusions, and recommendations to the United States District Judge.

## I.    Background

Proceeding pro se and *in forma pauperis*, Plaintiff Phillip M. Velazquez filed this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights in connection with an April 28, 2018, incident at the Lubbock County Detention Center (LCDC). Velazquez asserts that LCDC inmates caused "a disturbance . . . in the pod" (Compl. 4, ECF No. 1),[2] which led to Defendants Corporal Cody Baker and Officer Durham purportedly using excessive force while removing him from his cell and escorting him to the special housing unit (SHU). *See id.*; Tr. 3:10:53–:27:44.[3] Velazquez also characterizes Officer Durham's alleged use of force as retaliatory, claiming that Durham used force as a result of a prior civil rights lawsuit he filed against other LCDC DRT officers. Compl. 3–4; Tr. 3:27:48–:28:55. Further, Velazquez claims that after the incident, Officer Durham "placed [him] in an unsanitary cell" with urine on the floor. Compl. 4; Tr. 3:28:29–:30:52. Velazquez seeks "relief for compensation and settlement." Compl. 4.

Velazquez filed his Complaint April 15, 2020. ECF No. 1. The District Judge subsequently granted Velazquez *in forma pauperis* status and transferred the case to the undersigned United States Magistrate Judge for further proceedings. ECF Nos. 6, 7. The undersigned thereafter reviewed Velazquez's Complaint, as well as authenticated records from Lubbock County, and held a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), where Velazquez appeared and testified under oath.

---

[2] Page citations to Velazquez's pleadings refer the electronic page number assigned by the Court's electronic filing system.

[3] Citations to the transcript refer to the Court's audio recording of the evidentiary hearing held June 16, 2020.

After considering Velazquez's allegations in his Complaint, his responses at the *Spears* hearing, authenticated records, and applicable law, the Court determined that Velazquez's claim for excessive force against Officer Durham survived preliminary screening under 28 U.S.C. §§ 1915 and 1915A. ECF No. 12. Consequently, the Court entered an order requiring Officer Durham to answer or otherwise plead to Velazquez's claim.[4] *Id.* Officer Durham filed a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 28, 2020, asserting Velazquez had failed to state a viable claim for excessive force. Mot. 1, ECF No. 17.

Upon review of Officer Durham's Motion, the undersigned recommends that Officer Durham's motion to dismiss be denied as to Velazquez's excessive force claim and that the matter be transferred to the district judge for further proceedings. As to Velazquez's remaining claims, however—excessive force against Corporal Baker; retaliation and conditions of confinement against Officer Durham; all claims against LCDC; and any claims against Doe Defendants—the undersigned recommends that such claims be dismissed in accordance with 28 U.S.C. §§ 1915 and 1915A.

## II.    Standard of Review

### A. Preliminary Screening of a Prisoner Complaint.

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

---

[4] Officer Durham initially failed to answer Velazquez's Complaint, despite the Court's order. The Court subsequently directed Officer Durham to file an answer and show cause why she should not be held in contempt for failing to comply with the Court's October 15, 2020, order. ECF No. 15. Officer Durham responded on December 28, 2020, apologizing for her failure and asserting that, through a series of miscommunications between herself and her supervisor, she believed the Lubbock County District Attorney's Office was already handling the case on her behalf, "including the filing of all the necessary legal paperwork." ECF No. 19, at 3. Having carefully reviewed Officer Durham's response, the undersigned recommends that the Court impose no sanctions and make no contempt finding.

who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### B. Rule 12(b)(6) Motion to Dismiss Standard.

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). A court need only determine whether the plaintiff has stated a legally cognizable claim; it does not evaluate whether the plaintiff is ultimately likely to prevail. *See United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 800 F.2d 804, 807 (5th Cir. 1990)). Rule 12(b)(6) motions are disfavored and granted sparingly. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

### III.    Discussion

### A. Velazquez's Claims and the Authenticated Records.

In his Complaint Velazquez asserts claims against the following Defendants: (1) LCDC; (2) Corporal Cody Baker; (3) DRT Officer Hannah Durham; and (4) Doe Defendants. Compl. 1, 3–4; Tr. 3:07:11–08:14. Velazquez contends that on April 28, 2018, inmates created "a disturbance in the pod" by yelling obscenities and throwing trash from their cells. Compl. 4; Tr.

5

3:09:41–:10:20. Because of the inmates' behavior, Velazquez claims that Sergeant Young (not named as a defendant herein) ordered the pod to be placed on 23-hour lockdown; in response, inmates threw more trash and continued yelling. Tr. 3:09:41–10:51. Velazquez avers that Sergeant Young then ordered the inmates to step forward and make their remarks in plain sight. Tr. 3:10:21–:51. In response, Velazquez alleges one inmate yelled an obscenity and, believing it to be Velazquez, Sergeant Young ordered Corporal Baker to remove Velazquez from his cell. Tr. 3:10:52–:12:28. During his testimony at the hearing, Velazquez denied yelling any obscenities. *Id.*

Velazquez further testified at the *Spears* hearing that at this point his cell door popped open (Tr. 3:10:53–:13:20) and he conceded that he attempted to close it. Tr. 3:13:32–16:35; *see* Compl. 9 (LCDC report describing April 28 incident). Velazquez asserted that Corporal Baker, along with other officers, came to his cell window; one officer advised that they were going to escort Velazquez to the SHU. Tr. 3:10:53–:14:05. Velazquez denied, however, that Corporal Baker ordered him to step out of the cell, as stated in the authenticated records. Tr. 3:13:32–:14:05; *see* Compl. 9.

According to Velazquez, Corporal Baker grabbed Velazquez by his collar and "yanked" him out of the cell, "took him down to the showers," and slammed him to the floor. Tr. 3:16:45–17:52. Velazquez testified that the other officers jumped on him, applied handcuffs, and radioed for DRT officers. *Id.* An unknown officer, Velazquez stated, escorted him downstairs, where Officer Durham took over. *Id.*

Velazquez also averred that, after being "handed . . . over to Durham, there was no resistance, there was no uncooperative stuff going on, nothing of that sort." Tr. 3:22:54–:23:11. Despite his purported lack of resistance, Velazquez claimed that while he was handcuffed, Officer

Durham raised his arms behind his back and carried him "like luggage," grabbing the cuffs, pulling his wrists, and dragging his feet behind him. Tr. 3:21:33–:27:44; 3:24:00–:45. Velazquez testified that his "face [was] facing the floor" with only his toes contacting the floor (Tr. 3:25:33–:26:10) and that he could not "catch [his] step" because Officer Durham walked "fast on purpose." Tr. 3:25:35–:25:50. In Velazquez's estimation, Officer Durham held him in that position for approximately three minutes—the entire walk to the SHU.[5] *Id.* Velazquez further claimed that during the escort, Officer Durham whispered in his ear, "You wanna sue my people? You wanna sue Dial?" *Id.* In Velazquez's view, Officer Durham was retaliating against him for filing a § 1983 lawsuit against DRT Officers Dial and Bates. Tr. 3:27:48–:28:25.

As a result of Corporal Baker's alleged force, Velazquez did not claim any harm or injury and denied seeking medical attention. Tr. 3:20:52–:21:26. Regarding Officer Durham's purported force, Velazquez asserted that he suffered pain in his shoulders and neck. Tr. 3:26:22–:27:44. Velazquez acknowledged, however, that the pain ceased when they reached the SHU and Officer Durham removed the handcuffs. *Id.* And Velazquez stated that he did not seek medical treatment related to the temporary pain. *Id.*

Velazquez further testified that after Officer Durham escorted him to the SHU, she (1) placed him in "an unsanitary cell" that had urine on the floor and was "nasty" (Compl. 4; Tr. 3:28:29–:30:52) and (2) denied his request for cleaning supplies. Tr. 3:28:29–:30:52. Velazquez also stated at the hearing that he waited until shift-change and asked the next shift's on-duty officers to provide him with cleaning supplies, but they rejected his request because Officer Durham had so directed them. *Id.* According to Velazquez it was not until his mother called LCDC that officers provided him with cleaning supplies. *Id.* Velazquez averred that he received

---

[5] Construed in Velazquez's favor, he basically alleges Officer Durham carried or dragged him to the SHU with most of his body weight born by his wrists, arms, and shoulders, which were raised and held behind his back.

the supplies on April 30 or May 1, 2018—i.e., two to three days after being placed in the purportedly unclean cell. Tr. 3:30:54–:31:58. Velazquez does not attribute any harm to the alleged condition of his cell. *See* Tr. 3:28:29–:31:58. Velazquez seeks "relief for compensation and settlement" related to the purported constitutional violations. Compl. 4.

### B. The District Court should dismiss Velazquez's claims against LCDC and any Doe Defendant.

On the first page of his Complaint, Velazquez lists LCDC as a Defendant. *See* Compl. 1. At the *Spears* hearing, however, Velazquez stated that he did not intend to name LCDC as a Defendant in this action. Tr. 3:07:11–:07:37. The undersigned therefore recommends that the District Court dismiss LCDC as a Defendant.

Velazquez further stated that in addition to Defendants Baker and Durham, he wished to add "two other" persons as defendants but he did not know their names. Tr. 3:08:15–:09:03. But during the hearing, Velazquez did not identify any alleged unconstitutional conduct in relation to these two Doe Defendants. The Court asked Velazquez to confirm whether there was "anything else that [he] [is] alleging that [the Court] had not discussed"; Velazquez did not provide or state any claims or relevant facts as to the Doe Defendants. Tr. 3:33:30–:36:15. To the extent Velazquez attempts to add Doe Defendants to the claims raised in his Complaint, the undersigned recommends that the District Court dismiss such Defendants without prejudice because Velazquez has failed to plead any facts stating a viable constitutional claim against them. *See Sias v. Louisiana*, 146 F. App'x 719, 720 (5th Cir. 2005) (holding that vague and conclusory allegations provide an insufficient basis for § 1983 claims); *Richards v. Johnson*, 115 F. App'x 677, 678 (5th Cir. 2004) (same); *Lloyd v. Jones*, CASE NO. 9:18-CV-211, 2019 WL 4786874, at *6 (E.D. Tex. Sept. 10, 2019) (quoting *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)) ("The Court does not accept as true 'conclusory allegations, unwarranted factual inferences,

8

or legal conclusions.'"), *R. & R. adopted by* 2019 WL 4747850 (E.D. Tex. Sept. 27, 2019); *see also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

### C. Velazquez's excessive use of force claim against Corporal Baker must be dismissed.

Velazquez's use of force claims arise under the Fourteenth Amendment because the incident occurred while he was a pretrial detainee. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards from *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). To sufficiently state an excessive force claim, "a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Id.* "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 399–400. In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 397.

Velazquez alleges that during the April 28, 2018, incident, Corporal Baker grabbed him by the collar, "yanked" him out of the cell, "took him down to the showers," and slammed him to the floor. Tr. 3:16:45–17:52. Velazquez admits this occurred, however, after an officer told him they were going to remove him from his cell and escort him to the SHU and Velazquez attempted to

close his cell door. Tr. 3:10:53–:14:05; 3:13:32–16:35. Moreover, Velazquez attributes *no* physical injury to Corporal Baker's purported actions (Tr. 3:20:52–:21:26), and he seeks only monetary damages. Compl. 4.

Officials are justified in using some degree of force "in a good-faith effort to maintain or restore discipline" where a prisoner refuses to cooperate with legitimate directives of an official. *Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified where inmate "refus[ed] to comply with the Officers' repeated orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution") (citing *Minix v. Blevins*, Civil Action No. 6:06cv306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007)); *Rios v. McBain*, No. Civ.A. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *R. & R. adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005). Thus, Velazquez's admitted actions, i.e., attempting to close his cell door after officers popped it open and informed him they were removing him, authorized some degree of force to maintain or restore discipline. The force applied, when examined under the *Kingsley* factors within the context of the facts and circumstances described by Velazquez, does not demonstrate objective unreasonableness on the part of Corporal Baker. *See, e.g., Diaz v. Ray*, 5:17-CV-025-BQ, 2017 WL 8790964, at *3 (N.D. Tex. Nov. 17, 2017) (applying *Kingsley* factors and dismissing pretrial detainee's excessive force claim where he failed to show the officer's use of force was objectively unreasonable—detainee suffered only minimal physical injury after officer applied force to obtain compliance with disobeyed order and maintain institutional discipline and security).

Moreover, to state a viable excessive force claim, "the plaintiff [must] have suffered at least some form of injury that is more than de minimis." *Galada v. Payne*, 421 F. App'x 460, 462 (5th Cir. 2011) (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (affirming dismissal on summary judgment of pretrial detainee's excessive force claim where he failed to allege he suffered any physical injury)); *see Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)); *Vizcayno v. Michael Unit*, Civil Action No. 6:18cv440, 2020 WL 5536504, at *7–8 (E.D. Tex. July 26, 2020) (finding prisoner's excessive force "claims lack[ed] an arguable basis in law" where he "suffered no physical injury that was greater than *de minimus*"), *R. & R. adopted by* 2020 WL 5534579 (E.D. Tex. Sept. 14, 2020).

Because Velazquez admits he attempted to close his cell door after officers opened it to take him to the SHU, the law allows the officers to apply some degree of force to obtain compliance. The undersigned therefore recommends that the District Court dismiss Velazquez's claim based on his factual assertions and because he attributes no physical injury to Corporal Baker's alleged use of force.[6]

### D. Velazquez has not demonstrated that Officer Durham subjected him to unconstitutional conditions of confinement.

Velazquez asserts that upon escorting him to the SHU after the pod disturbance, Officer Durham placed him in "an unsanitary cell" that had urine on the floor and was generally "nasty." Compl. 4; Tr. 3:28:29–:30:52. Velazquez further alleges that he asked Officer Durham to provide

---

[6] At the *Spears* hearing, Velazquez also stated that he believed Corporal Baker's "take-down maneuver" violated LCDC protocol. Velazquez cannot state a cognizable constitutional claim based on a jail official's failure to follow jail policy. *See, e.g., Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation.").

cleaning supplies but she refused. Tr. 3:28:29–:30:52. Velazquez testified at the *Spears* hearing that he waited until shift-change and asked the next shift's on-duty officers to provide him with cleaning supplies, but they also refused his request because Officer Durham had so instructed them. *Id.* It was not until his mother called LCDC, according to Velazquez, that officers provided him with cleaning supplies. *Id.* Velazquez averred that he received the supplies on April 30 or May 1, 2018—i.e., two or three days after being placed in the purportedly unclean cell. Tr. 3:30:54–:31:58. Velazquez does not attribute any harm to the alleged condition of his cell. *See* Tr. 3:28:29–:31:58.

A pretrial detainee's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 532 (1979); *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Under *Bell*, the State "must distinguish between pretrial detainees and convicted felons in one crucial respect: The State cannot punish a pretrial detainee." *Hare*, 74 F.3d at 639. "The Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004). The Constitution is not offended, however, by "a *de minimis* level of imposition." *Bell,* 441 U.S. at 539 n. 21; *see Geagan v. Couvillon*, 2018 WL 1750954, at * 4 (W.D. La. March 22, 2018) (noting that "the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences").

A pretrial detainee may bring constitutional challenges under two theories: (1) as an attack on a "condition of confinement" or (2) as an "episodic act or omission." *Shepherd v. Dallas Cty.,* 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644–45). A condition of confinement claim is a "[c]onstitutional attack on general conditions, practices, rules, or restrictions of pretrial

confinement." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997) (quoting *Hare*, 74 F.3d at 644).  To

adequately state such a claim, the plaintiff must establish:

> (1) a rule or restriction or . . . the existence of an identifiable intended condition or practice . . . [or] that the jail official's acts or omissions were sufficiently extended or pervasive; (2) which was not reasonably related to a legitimate governmental objective; and (3) which caused the violation of [a detainee's] constitutional rights.

*Montano v. Orange Cty., Texas*, 842 F.3d 865, 874 (5th Cir. 2016) (internal quotation marks

omitted) (quoting *Estate of Henson v. Wichita Cty.*, 795 F.3d 456, 468 (5th Cir. 2015)).  If a pretrial

detainee cannot point to an established rule or restriction, then "he must show that the jail official's

acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice to which the

*Bell* test can be meaningfully applied." *Hare*, 74 F.3d at 645.

Conversely, where a pretrial detainee's claim does not challenge a condition, practice, rule,

or restriction, but instead "attacks the episodic acts or omissions of a state jail official, the question

[becomes] whether that official breached his constitutional duty to tend to the basic human needs

of persons in his charge," and *Bell* no longer provides the appropriate standard for review. *Hare*,

74 F.3d at 645; *accord Scott*, 114 F.3d at 53.  An official may be held liable for such episodic acts

or omissions "only if it can be shown that they had actual subjective knowledge of a substantial

risk of harm to their detainee, but responded with deliberate indifference to that risk." *Moore v.

4th Judicial Dist. Court*, No. 3:11-CV-1731, 2012 WL 299555, at *5 (W.D. La. Jan. 11, 2012)

(citing *Hare*, 74 F.3d at 650), *R. and R. adopted* No. 3:11-CV-1731, 2012 WL 314351 (W.D. La.

Feb. 1, 2012), *vacated* (Feb. 7, 2012), *R. and R. adopted* No. CIV.A. 11-1731, 2012 WL 860406

(W.D. La. Mar. 12, 2012); *Payne v. Collins,* 986 F. Supp. 1036, 1952 (E.D. Tex. 1997).  To prove

his rights were violated by an individual or episodic act, a pre-trial detainee "must establish that

an official acted with *subjective* deliberate indifference." *Scott*, 114 F.3d at 54 (quoting *Hare*, 74

F.3d at 649 n.4). Further, the conditions must be "so serious as to deprive [plaintiff] of the minimal measure of life's necessities, in this case the basic human need for sanitary living conditions." *Alexander v. Tippah Cty.*, 351 F.3d 626, 630 (5th Cir. 2003).

Initially, the Court observes that Velazquez has not cited any "rule or restriction or . . . the existence of an identifiable intended condition or practice" sufficient to bring a conditions of confinement claim against LCDC itself.[7] *See Montano*, 842 F.3d at 874. Nor has he alleged that Officer Durham's actions were "extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice to which the *Bell* test can be meaningfully applied." *Hare*, 74 F.3d at 645. Accordingly, any claim purporting to bring a general or intended "conditions of confinement" necessarily fails.

Even if Velazquez could satisfy the first element, the Court must still dismiss the claim because he does not demonstrate that his confinement in the cell for three days constitutes "punishment," i.e., that such confinement violated his constitutional rights. *See Geagan*, 2018 WL 1750954, at *4 (holding plaintiff's complaint of "two incidents in which the toilet in his dorm overflowed, causing 'feces, urine, and other foreign objects' to flood the area . . . while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute 'punishment' or otherwise rise to the level of constitutional violations"); *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (finding no constitutional violation where pre-trial detainee had to "endure the stench of his own feces and urine" for four days due to an overflowed toilet in his cell); *cf. Alexander v. Hamilton*, No. A-14-CA-654-LY, 2015 WL 339730, at *4 (W.D. Tex. Jan. 23, 2015) (holding no constitutional violation occurred where pre-trial detainee was denied a shower for five days); *Hamilton v. Lyons*, 74 F.3d 99, 106–07 (5th Cir. 1996) (finding that depriving pre-trial detainee of

---

[7] In any case, Velazquez has already disavowed any intention of suing LCDC and has made clear his claims are brought against the officers in their individual capacities. Tr. 3:07:11–:07:37.

a shower for three days, as well as denying sheets, telephone access, visitation, and recreation, did not constitute punishment).

Alternatively, Velazquez's claim against Durham is most likely more accurately characterized as an episodic act or omission, based on Durham's alleged decision to place him in a dirty cell; however, this claim fails for a similar reason—Velazquez cannot show that his basic human needs were not met by the temporary sanitation problem. *Hare*, 74 F.3d at 645. A detainee generally cannot state such a claim where he faces sanitation problems only for a brief period. *See Johnson v. Anderson*, 255 Fed. App'x 851, 854 (5th Cir. 2007) (holding a brief delay of "three or four days" of unsanitary conditions in holding cell before it was cleaned by staff does not demonstrate deliberate indifference to needs); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) (finding detainee's episodic act or omission claim against officials for confinement in unsanitary cell failed because "a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation"); *Unger v. Taylor*, CIVIL ACTION NO. 6:06-CV-466, 2007 WL 9711406, at *12 (E.D. Tex. Sept. 18, 2007) (noting that "a short term sanitation problem does not amount to a constitutional violation"), *R. & R. adopted by* 2008 WL 11422152 (E.D. Tex. Feb. 1, 2008), *aff'd* 368 F. App'x 526 (5th Cir. 2010). Thus, even assuming Velazquez was subjected to unsanitary cell conditions for a period of approximately three days, he has not pleaded facts giving rise to a cognizable constitutional claim. *See Desroche*, 507 F. Supp 2d at 581 (dismissing a conditions of confinement claim where plaintiff faced allegedly unsanitary conditions for a period of ten days); *Unger*, 2007 WL 9711406, at *11–12 (dismissing a conditions of confinement claim based on unsanitary conditions where plaintiff was placed in a "filthy holding tank" for two days). Thus, Velazquez's claim fails for this additional reason.

For these reasons, the undersigned recommends dismissal of Velazquez's claim based on the purported subjection to unsanitary cell conditions.

### E. Velazquez has not pleaded adequate facts demonstrating that Officer Durham unconstitutionally retaliated.

In addition to claiming that Officer Durham's actions constituted an excessive use of force, Velazquez also asserts that her actions were retaliatory. *See* Compl. 3–4; Tr. 3:27:48–:28:55. Specifically, Velazquez contends that during the escort, Officer Durham whispered in his ear, "You wanna sue my people?  You wanna sue Dial?" Tr. 3:21:33–:27:44. In Velazquez's view, Officer Durham was retaliating against him for filing a previous § 1983 lawsuit against DRT Officers Dial and Bates.[8] Tr. 3:27:48–:28:25.

A plaintiff must demonstrate the following to establish a claim for retaliation: "(1) the existence of a specific constitutional right; (2) the defendant's intent to retaliate for the exercise of that right; (3) a retaliatory adverse act; and (4) causation." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). Conclusory allegations, including a prisoner's personal belief that he is the victim of retaliation, are insufficient to support a claim for retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Haddix v. Kerss*, 203 F. App'x 551, 554 (5th Cir. 2006) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)). In evaluating such claims, the Fifth Circuit has cautioned that "[p]risoners' claims of retaliation are regarded with skepticism" and should be "carefully scrutinized by the

---

[8] In civil action number 5:18-cv-069-M-BQ, filed February 27, 2018, Velazquez named DRT Officers Larry Dial and Michael Bates as defendants.

courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166).

Assuming, without deciding, that Velazquez can establish the first two elements of a retaliation claim, he has nevertheless failed to plead adequate facts establishing the remaining elements. Velazquez alleges that Officer Durham retaliated because Velazquez had named two of her fellow officers, Dial and Bates, as defendants in case number 5:18-cv-069-M-BQ. Tr. 3:27:48–:28:25. In that § 1983 action, however, Velazquez continued filing pleadings well after April 28, 2018—the date of Officer Durham's alleged retaliation. In addition, Velazquez subsequently filed suit against Officer Durham in this action. Thus, the Court cannot conclude that Velazquez was subjected to retaliatory acts sufficiently adverse that prevented or chilled him from pursuing constitutionally protected activities. *See, e.g.*, *Bibbs v. Early*, 541 F.3d 267, 272 n.26 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006) ("[An] inmate's retaliation claim must allege adverse acts that would chill or silence a person of ordinary firmness from future First Amendment activities" (internal quotation marks omitted)); *Hill v. Gatson*, Civil Action No. G-03-966, 2007 WL 869536, at *2 (S.D. Tex. Feb. 15, 2007) (noting that prisoner had not alleged that defendant's filing of an allegedly false grievance "prevented or chilled him from filing [additional] grievances"); *Johnson v. Parks*, No. Civ.A.5:03–CV–024–C, 2004 WL 2101669, at *5 (N.D. Tex. Sept. 15, 2004) (dismissing prisoner's retaliation claim in part because he did not demonstrate that defendant's action caused prisoner to stop, or prevented him from, filing grievances or lawsuits), *aff'd*, 182 F. App'x 300 (5th Cir. 2006).

Moreover, Velazquez did not name Officer Durham in the previous lawsuit, nor did the Court require Officers Dial and Bates to answer or otherwise respond to Velazquez's claims. Thus, Velazquez has failed to show causation, *i.e.*, that Officer Durham would not have acted but for

Velazquez filing a § 1983 action against Officers Dial and Bates. *See, e.g.*, *Haddix*, 203 F. App'x

at 555 (explaining that prisoner failed to adequately plead retaliation claim in part because he "has

not alleged a chronology of events from which retaliation may plausibly be inferred"); *Joyner v.*

*Tanner*, CIVIL ACTION NO. 17-10040, 2018 WL 3682514, at *7 (E.D. La. July 9, 2018) (finding

"no reason whatsoever to infer that [prior] lawsuit motivated [defendants] to engage in retaliatory

actions," where suit was "still in the preliminary screening stage" and "defendants ha[d] not yet

been required to take *any* action to defend against it").

### F. Officer Durham's Rule 12(b)(6) motion to dismiss Velazquez's excessive force claim should be denied.

Velazquez asserts that when he was "handed . . . over to Durham, there was no resistance,

there was no uncooperative stuff going on, nothing of that sort." Tr. 3:22:54–:23:11. While

handcuffed, and despite his purported lack of resistance, Velazquez claims that Officer Durham

raised his arms behind his back and carried him "like luggage," grabbing the cuffs, pulling his

wrists, and dragging his feet behind him. Tr. 3:21:33–:27:44; 3:24:00–:45. Velazquez further

avers that his "face [was] facing the floor" with only his toes contacting the floor (Tr. 3:25:33–

:26:10) and that he could not "catch [his] step" because Officer Durham walked "fast on purpose."

Tr. 3:25:35–:25:50. In Velazquez's estimation, Officer Durham held him in that position for

approximately three minutes—the entire walk to the SHU. *Id.* Velazquez alleges that Officer

Durham acted with intent to punish him (*id.*) and that, as a result of Officer Durham's alleged

actions, he suffered pain in his shoulders and neck that lasted the duration of the escort. Tr.

3:26:22–:27:44.

In her motion to dismiss, Officer Durham asserts that these allegations "are conclusory,

speculative, and not well-pleaded." Mot. at 5 (citing *Iqbal*, 556 U.S. at 679). She also contends

that Velazquez's claim presents nothing more than a *de minimis* injury and is therefore not actionable. *Id.*

The Court agrees with Officer Durham's description of Velazquez's injury claim but not her characterization of Velazquez's factual assertions nor her subsequent legal conclusion. Velazquez's allegations, accepted as true and viewed in the light most favorable to Velazquez, as the Court must do in evaluating a 12(b)(6) motion, sufficiently state a claim for excessive force under the Fourteenth Amendment. Velazquez contends that as Officer Durham escorted him, he was handcuffed and did not resist. Tr. 3:21:33–:27:44. He further alleges that Officer Durham deliberately "placed [his] arms far back," which caused him pain. Compl. 4; *see* Tr. 3:21:33–:27:44. That is, Velazquez asserts that: he did not present *any* threat to Officer Durham; the purported force was excessive to the need; and Officer Durham did not temper her use of force. *See* Compl. 4; Tr. 3:21:33–:27:44. As a result, the first, third, fourth, fifth, and sixth *Kingsley* factors (i.e., the relationship between the need for the use of force and the amount of force used, any effort made by the officer to temper or limit the amount of force, the threat to institutional order reasonably perceived by the officer, the severity of the security problem at issue, and plaintiff's active resistance) weigh in Velazquez's favor at this stage.

In contrast, the second *Kingsley* factor (i.e., the extent of plaintiff's injury) heavily weighs in Officer Durham's favor. According to Velazquez, he suffered pain in his shoulders and neck that lasted the duration of the escort—i.e., the pain lasted approximately three minutes. Tr. 3:21:33–:27:44. Velazquez denies seeking medical treatment related to the temporary pain. *Id.* Velazquez's injury, if any, is undeniably minor. On balance, however, weighing Officer Durham's alleged actions—as described by Velazquez and assumed to be true—would constitute gratuitous force applied to a handcuffed and non-resisting detainee during an escort inside the jail. The use

of such force, which is alleged to have caused Velazquez some degree of pain, would raise a plausible claim that Officer Durham used force maliciously and sadistically for the very purpose of causing harm. *See Kingsley*, 576 U.S. at 400 (explaining that under the Fourteenth Amendment, "pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less maliciously and sadistically" (internal quotation marks omitted)).

Officer Durham cites three cases in her motion claiming that, because the use of force caused *de minimis* injury, Velazquez's claims must fail. Mot. 5–6 (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (affirming dismissal where injury claimed was a sore, bruised ear, i.e., nothing more than a *de minimis* injury) (citing *Hudson*, 503 U.S. at 10); *Hodge v. Williams*, Civil Action No.4:08-CV-330-Y, 2009 WL 111565, at \*3 (N.D. Tex. Jan. 16, 2009), *aff'd*, 343 F. App'x 979 (5th Cir. 2009) (dismissing minor cuts and a sore neck as *de minimis* injuries where prison guard informed another inmate that plaintiff had complained about other inmate's behavior and other inmate retaliated by striking plaintiff); *Dale v. Officer Bridges*, No. 3:96-CV-3088-AH, 1997 WL 810033, at \*1, 3 (N.D. Tex. Dec. 22, 1997) (concluding use of force was *de minimis*, where officer yanked plaintiff by the arm through cell bars to read his wristband, causing bruising under plaintiff's eye), *aff'd sub nom. Dale v. Bridges*, 154 F.3d 416 (5th Cir. 1998)).

While the Court agrees with Officer Durham's point in a general sense, the Supreme Court has rejected the reasoning that lack of a physical injury *always* serves as a bar to liability in an excessive force case. Noting its decision in *Hudson* "aimed to shift the core judicial inquiry from the extent of the injury to the nature of the force—specifically, whether it was nontrivial and was applied . . . maliciously and sadistically to cause harm," the Supreme Court in *Wilkins* specifically found fault with the District Court's holding "that the absence of 'some arbitrary quantity of injury' requires automatic dismissal of an excessive force claim" because it "improperly bypasses this

core inquiry." *Wilkins*, 559 U.S. at 39 (internal quotation marks omitted); *see McCoy v. Alamu*, 950 F.3d 226, 232, 233 n.9 (5th Cir. 2020) (rejecting defendant's claims that pepper-spray injuries were *de minimis* and therefore not actionable because "injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts" (quoting *Wilkins*, 559 U.S. at 38), and holding that "the extent of injury is relevant, but not determinative")).

Here, the use of force *as alleged by Velazquez* was gratuitous, i.e., it was applied after resistance had ceased and force was no longer necessary to maintain order; thus, Velazquez pleads facts, which the Court must accept as true at this juncture, alleging that Officer Durham used force "maliciously and sadistically" to cause Velazquez harm. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . [and] [t]his is true whether or not significant injury is evident."); *Williams v. City of Houston*, Civil Action No. H-16-3342, 2019 WL 2435854, at *10 (S.D. Tex. June 11, 2019) (denying officer's summary judgment motion where although "summary judgment evidence show[ed] that [detainee] had earlier resisted arrest and the blood test, that resistance could not justify [officer's] later use of force if resistance had ceased" and there remained a factual dispute as to "whether the force used was reasonably necessary to restrain [detainee]"); *see also Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998) (explaining within the context of a Fourteenth Amendment analysis, "the extent of injury is one factor to be considered with the need for application of force, the relationship between that need and the amount of force used and other factors, [and] that the extent of injury is only one relevant factor and cannot be exclusively determinative" (internal quotation marks omitted)); *Walker v. Jefferson Par. Sheriff Newell Normand*, CIVIL ACTION NO. 16-2890, 2016 WL 6609170, at *3–4 (E.D. La. Oct. 17, 2016) (recommending detainee's excessive force claim proceed forward where detainee claimed that

defendants' actions caused him back, wrist, and neck pain and court could not, at screening stage, determine "whether the force used by the defendants . . . was objectively reasonable or necessary under the circumstances"), *R. & R. adopted by* 2016 WL 6603180 (E.D. La. Nov. 8, 2016).  The undersigned therefore recommends that Officer Durham's motion to dismiss be denied as to the excessive force claim. [9]

## IV.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **DISMISS** Velazquez's claims against LCDC, Corporal Baker, and the Doe Defendants with prejudice in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Claims against Officer Durham for unconstitutional conditions of confinement and retaliation should also be **DISMISSED** with prejudice.  The undersigned further recommends that Officer Durham's motion to dismiss Velazquez's excessive force claim (ECF No. 17) be **DENIED**, and that the United States District Judge implement a scheduling order, including dates certain for pretrial deadlines and filing dispositive motions, for Velazquez's excessive use of force claim against Officer Durham.  Finally, the undersigned recommends that the Court impose no sanctions and make no contempt finding as to Officer Durham.

---

[9] Officer Durham also moves to dismiss any potential official capacity claims against her, in that she finds it "unclear" whether such a claim is being asserted because Velazquez does not designate in what capacity he is suing her (or the other defendants).  Mot. 6.  A suit against Defendants in their official capacities would be, in effect, a suit against LCDC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (stating that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks omitted)).  As noted above, however, Velazquez has already disavowed any intention of suing LCDC.  Tr. 3:07:11–:07:37. Accordingly, Officer Durham's motion should be denied as moot in this regard.  Moreover, LCDC is not a proper defendant and does not have the legal capacity to be sued. *See Finley v. Lubbock Cty. Det. Ctr.*, No. 5:16-CV-209-BQ, 2017 WL 6761924, at *4 (N.D. Tex. Oct. 31, 2017) (noting that "federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit. . . ." and that "LCDC is not a seperate legal entity with jural authority") (internal quotations and cites omitted).

## V.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: January 28, 2021.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE